IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES GALLAGHER,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **ACUITY SPECIALTY PRODUCTS, INC. D/B/A ZEP SALES & SERVICE,** | : | |
| | : | |
| | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |

**COMPLAINT**

**I. PRELIMINARY STATEMENT**

This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, James Gallagher (hereinafter "Plaintiff"). Plaintiff was an employee of Acuity Specialty Products, Inc. d/b/a Zep Sales & Service (hereinafter "Zep" and "Defendant") in Lehigh County, Pennsylvania, who has been harmed by disability-based discrimination and retaliatory practices, as well as other improper conduct by Defendant Zep.

This action is brought under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§12101 *et seq.* as amended by the ADAAA.

**II. JURISDICTION AND VENUE**

1. The jurisdiction and venue of this Court is invoked in this District pursuant to 28 U.S.C. § 1331 as arising under the laws of the United States, and in particular the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§12101 *et seq.*, as amended by the ADAAA.

1

2. Venue is proper in the Eastern District of Pennsylvania as some or all of the events complained of herein occurred in Lehigh County, Pennsylvania.

3. All conditions precedent to the institution of this suit have been fulfilled.

4. Plaintiff has invoked the procedure set forth in the ADA. On or about April 8, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was jointly filed with the Pennsylvania Human Relations Commission ("PHRC"), against Defendant alleging, inter alia, disability-based employment discrimination and retaliation. On August 3, 2021, a Notice of Right to Sue was issued by the EEOC.

5. This action has been filed within ninety (90) days of receipt of said Notice.

6. The individual Defendant supervisors identified as "Parties" will be sought to be formally added as parties when the PHRA claims are ripe.

### III. PARTIES

7. Plaintiff is a male citizen and resident of the Commonwealth of Pennsylvania. Plaintiff at all times relevant herein was employed by Defendant, Zep.

8. At all times relevant herein, Plaintiff was an "employee" as defined by the ADA, 42 U.S.C. § 12111(4), and is subject to the provisions of this Act.

9. At all times relevant herein, Plaintiff was a "person" as defined the ADA, 42 U.S.C. § 12111(7), and is subject to the provisions of said Act.

10. At all times relevant herein, Plaintiff was "disabled" as defined by the ADA, 42 U.S.C. § 12102(1), and is subject to the provisions of said Act.

11. At all times relevant herein, Plaintiff was a "qualified individual" as defined by

the ADA, 42 U.S.C. § 12111(8), and is subject to the provisions of said Act.

12. Defendant Zep is a corporation headquartered in Atlanta, Georgia and is registered and qualified to do business in Pennsylvania under the laws of Pennsylvania with a principal place of business located at 860 Nestle Way, Breinigsville, Pennsylvania.

13. At all times relevant herein, Defendant Zep was an "employer" as defined by the ADA, 42 U.S.C. § 12111(5), and is subject to the provisions of said Act.

14. At all times relevant herein, Zep was a "person" as defined by the ADA, 42 U.S.C. § 12111(7), and is subject to the provisions of said Act.

15. At all times relevant hereto, Zep acted by and/or failed to act by and through the conduct of its officers, managers, agents and employees, all acting within the scope and course of their employment.

16. Zep has, acting through its agents, servants and representatives, on more than one occasion, met with Plaintiff, and has heard allegations from Plaintiff of disability-based harassment, disability-based discrimination, and retaliation.

17. At all relevant times herein, Zep knew, or had reason to know, of the actions and inactions alleged herein and/or has personally participated in some of said actions and is ultimately responsible for same.

18. At all times material hereto, Zep employed more than fifteen employees.

IV. **CAUSES OF ACTION**

18. Plaintiff was hired by Defendant Zep on or about September 6, 2011, as an Outside Sales Representative at Defendant's Breinigsville location. Plaintiff's

job was in the Food & Beverage Division of Defendant and his job responsibilities involved working in locations where food and beverage products were present, stored and distributed, so that safety concerns were important.

19. At all times, throughout his ten-year tenure with Defendant Zep, Plaintiff properly performed his job in a competent and loyal fashion. Plaintiff had no customer complaints and was performing and rated very high in sales performance.  Indeed there were no problems with Plaintiff's work or performance for over 9 years, until Plaintiff advised Defendant of medical issues when Covid began.

20. It is important to note for purposes of timing, that 1) Plaintiff had an exceptional record of good performance for over nine years [September 2011-March 2020]; 2) Concurrently with the onset of Covid in 2020, Plaintiff made documented requests, complaints for accommodation and regarding the lack thereof, from March 2020 to September 2020; and 3) Plaintiff, after the above course of protected complaints and reporting, was retaliatorily terminated for exaggerated/pretextual "incidents" occurring allegedly within one month between September, 202--October 2020.

21. Approximately between April 27, 2020 and September 2020, Plaintiff observed and complained about numerous instances related to the lack of PPE and health and safety protocols, procedures and safeguards by Defendant, including in his particular case that these were required accommodations related necessitated due to his ADA disability.

4

22. Plaintiff's supervisors for purposes of this Complaint were Bob Klinetob (Senior Vice Present and General Manager); Matt La Cava (Vice President Business Development) (and Plaintiff's immediate supervisor); Andy Seneca (Regional Vice President); Andy Craig (Food Safety Specialist); Blaine Morton (District Manager); Mar Sturdivant (Director of Human Resources); Jackie Eckenrode; Travis Hamilton, and Susan Wozniak (Director of Human Resources).

23. At all times material hereto, Plaintiff had serious medical conditions including severe asthma that substantially impaired one or more major life activities, including but not limited to breathing, which constitutes a disability under the ADA. During the Covid pandemic that ensued in 2020, the Plaintiff's serious asthma condition, should he have contracted Covid, could be fatal.

24. In or about March 2020, as the Covid pandemic intensified, Plaintiff notified Defendant that he had the above serious medical condition (which constitutes a disability under the ADA) and stressed that it made him <u>extremely susceptible</u> to Covid. Concurrently with notifying Defendant of his disabilities Plaintiff made Defendant aware of his need for accommodations and initially stressed that for his disability, at a minimum, PPE in the form of masks, respirators, gloves and goggles had to be provided for all worksites that he was required to be present at.

25. Pursuant to Plaintiff's request for accommodation there was no interactive process initiated by Defendant, in violation of the ADA.

26. To the contrary,

  a) accommodation was never provided;

  b) Plaintiff complained repeatedly about concerns for his health and safety and the lack of accommodation in job sites where he was required to work and Defendant's refusal to take Covid safety seriously; and

  c) Plaintiff was terminated on October 20, 2020 directly as a result of the above.

27. Moreover, Plaintiff's reports and complaints regarding the lack of protective PPE and other accommodations constituted protected conduct for which Defendant retaliated as set forth below.

28. Eventually, beginning in earnest on or about September of 2020, having grown hostile and irritated at Plaintiff's prior ongoing, <u>documented</u> and confirmed reports, requests, and complaints regarding accommodation and retaliation, Defendant decided to orchestrate a termination of Plaintiff which was accomplished by pretextual and manufactured "reasons" in the space of less than one month (September-October 20, 2020).

29. On or about March 30, 2020, despite Plaintiff's requests for PPE and during the Covid pandemic, Zep/AFCO sanctioned an event run by Bob Klinetob's team openly ignoring safety precautions suggested by OSHA and Pennsylvania Department of Health regulations which would also be required in order to accommodate Plaintiff.

30. At all relevant times, even as Plaintiff continuously (especially from April 202 to August 2020 – as documented) complained about Defendant's general

6

disregard of PPE and Covid safety protocols and procedures, Plaintiff stressed that in his case he wanted to continue working and needed these workplace safety and job site accommodations due to his susceptibility as a result of his severe asthma.

31. On or about April 27, 2020, Plaintiff sent yet another email to Matt La Cava reminding him of his disability of asthma and again Plaintiff requested an accommodation including masks, respirators, gloves, and goggles. In his email Plaintiff stated, "I will require PPE provided by or AFCO before I go into any food facility during the pandemic as I have been diagnosed with asthma in the past and possible long-term effects from a campylobacter infection." "This is my second request."

32. Despite statements by La Cava that he would "work on" Plaintiff's request, nothing was done to provide protective equipment to Plaintiff.

33. On or about April 29, 2020, Plaintiff sent Matt La Cava a third email requesting PPE.

34. Plaintiff's PPE request was ignored by La Cava. At all times relevant hereto, La Cava minimized, ignored and was hostile to Plaintiff's health concerns and requests for accommodations.

35. Zep, as routine, (not through any direct action of La Cava or Klinetob related to Plaintiff) eventually sent a very small package of PPE which lasted only a week and thus the lack of same and the lack of availability of same, effectively precluded safe plant visits by Plaintiff.

36. La Cava did not reply to Plaintiff's repeated requests for PPE equipment, but

rather began to systematically retaliate against Plaintiff for requesting accommodations due to his disability, including, but not limited to assigning Plaintiff's work to other employees and limiting Plaintiff's access to information and resources necessary to do his job.  At no time did La Cava engage in the ADA's interactive process.

37. The retaliation against Plaintiff, in large part due to La Cava's retaliatory animus (in not wanting to deal with Plaintiff's repeated safety complaints and accommodation requests), Regional Manager Andy Seneca also jointly retaliated against Plaintiff by:

    a. Denying Plaintiff's meeting requests;
    b. Denying equipment approvals;
    c. Restructuring employee assignments that would have normally gone to Plaintiff, without notifying Plaintiff;
    d. Authorizing changes orders without notifying Plaintiff, causing incorrect items to be shipped;
    e. Improperly not paying Plaintiff earned commissions pursuant to Plaintiff's employment agreement.

38. Pursuant to his contractual agreement to be paid commissions, Plaintiff earned certain commissions before termination which, due to retaliation, were not paid.

39. Plaintiff was repeatedly harassed, threatened, intimidated and ignored by his supervisors and co-workers when he pointed out numerous Covid safety, protective PPE, mask and other violations, with the knowledge and implied

acquiescence of Defendant.

40. Co-worker Travis Hamilton, a member of the equipment department, was openly hostile and threatening to Plaintiff after Plaintiff requested that Hamilton wear a mask around Plaintiff due to his medical condition. At all times, Defendant's supervisors, including La Cava, were made aware of this by Plaintiff and retaliated against Plaintiff for reporting same.

41. Hamilton, as part of the course of retaliation against Plaintiff allowed and tolerated by Defendant, purposely changed work orders, canceled and rescheduled deliveries, refused service to customers and lied about work/job orders, as retaliation against Plaintiff. At all times, Defendant's supervisors, including La Cava, were made aware of this by Plaintiff and retaliated against Plaintiff for reporting same and by allowing same to occur to hyper-criticize and ultimately oust Plaintiff.

42. Andy Craig, the Food Service Manager, harassed and berated and insulted Plaintiff in front of customers. At all times, Defendant's supervisors, including La Cava, were made aware of this by Plaintiff and retaliated against Plaintiff for reporting same and allowed it to occur.

43. When Plaintiff told La Cava that he was being threatened by Hamilton and asked for La Cava's intervention, La Cava ignored his request. At no time did Defendant either 1) engage in the interactive process; or 2) conduct a prompt, proper and unbiased investigation to address and/or remediate the above.

44. Plaintiff's complaints and reports set forth above constituted "protected conduct" for which Defendant retaliated.

45. The above Defendant actions constituted <u>actionable retaliation</u> because at a minimum they would deter, intimidate or discourage an employee from reporting reasonably perceived ADA violations.

46. Defendant and its agents <u>repeatedly</u> harassed, threatened, ridiculed and ignored Plaintiff's expressed concerns based on his medical and health fears and were annoyed and angry at Plaintiff for repeatedly pointing out numerous Covid safety, protective PPE, mask and other violations; and related requests by Plaintiff to accommodate him in the workplace.  In brief Defendant and its agents did not take the Federal and State government guidelines and regulations regarding Covid seriously, nor did they take Plaintiff's requests for ADA accommodation seriously as required by the ADA.

47. Due to the above requests for accommodation and/or protected conduct (occurring with documented regularity during the height of the Covid pandemic –in a period here of March 20, 2020-September, 2020) Defendant manufactured two or three pretextual hypercritical incidents in the space of less than <u>one month</u> in order to retaliatorily <u>terminate</u> Plaintiff on October 20, 2020 (concurrently during the Covid pandemic)—after nine plus years of prior exceptional service.

48. As added retaliation as part of Plaintiff's termination (and as stated above), Defendant did not pay Plaintiff earned commissions.

49. On October 20, 2020, Plaintiff was terminated without any prior warning in a letter from Susan Wozniak.  The letter did not state any reasons for his termination after 9 plus years of employment.

50. Defendant terminated Plaintiff for no reason other than discrimination and retaliation under the ADA.  At no time was any progressive discipline or reasonable or advance notice or fair process extended to Plaintiff.

51. The reasons proffered to "justify" termination are false, manufactured, and pretextual and  the stated reasons  alleged to have occurred were in close temporal proximity with the protected conduct and were specifically created to justify the decision to terminate and to accomplish and justify same.

52. Said "reasons" are pretextual to cover Defendant's discriminatory and retaliatory animus.

53. Defendant manufactured and exaggerated reasons to terminate Plaintiff.

54. Defendant was on specific notice, prior to its decision to terminate, of Plaintiff's ADA disabilities, yet failed to engage in the ADA's mandated interactive process.

55. Plaintiff believes and therefore avers that the termination of his employment was a violation of the ADA due to the aforementioned conduct.

56. Plaintiff believes, and therefore avers, that the termination of his employment was in retaliation for having exercised his rights under the ADA and for his accommodation requests in the workplace.

57. Defendant was hostile to Plaintiff for continuously reporting their safety violations which related to his personal safety and concerns for his disability and were needed and reasonable requests for accommodation.

58. Defendant without limitation failed and refused to provide Plaintiff with PPE and other Covid and disability related safety accommodations in response to his protected complaints and accommodation requests.

59. Plaintiff was treated in a different and disparate manner with regard to workplace rules regulations, discipline and standards than other employees who were not disabled and/or had not engaged in protected conduct.

60. Defendant failed to engage in the ADA's mandated interactive process to perform an individualized assessment to determine what Plaintiff's particular accommodation needs were.  As a result of failing to engage in the interactive process, Defendant is prevented and foreclosed from claiming that any accommodations sought by Plaintiff were "burdensome" or "unreasonable."

61. Defendant was responsible and liable for the conduct of its principals, employees, and agents for subjecting Plaintiff to a discriminatory and retaliatory employment and work environment, and for failing to accommodate Plaintiff and to protect Plaintiff from unlawful conduct.

62. As a direct result of the hostile and antagonistic conduct by Defendant's supervisory employees, Plaintiff was deprived of his employment.

63. As a direct result of Defendant's conduct, Plaintiff has been irrevocably damaged.

64. As a direct result of Defendant's above-stated conduct, Plaintiff has suffered ongoing back-pay and front-pay losses including base salary, commissions and benefits.

65. As a direct result of Defendant's above-stated conduct, Plaintiff has suffered

and continues to suffer emotional, psychological, and physical distress and humiliation.

66. As a direct result of Defendant's above-stated conduct, Plaintiff's career, professional and job opportunities have been impaired and damaged and he has suffered a loss of earnings and earning capacity.

67. Defendant's above stated actions, and in particular the retaliation, were intentional, and/or in reckless disregard of Defendant's obligation under the ADA.

## COUNT I
## PLAINTIFF v. DEFENDANT ZEP
## VIOLATION OF THE ADA--ACCOMMODATION

68. Paragraphs 1 through 67, inclusive, are incorporated by reference as if fully set forth at length herein.

69. At all times relevant herein, Plaintiff was disabled, had a record of a disability, and/or was regarded as and/or perceived as disabled by Defendant.

70. Plaintiff was able to perform all of the essential functions of his position with or without accommodation.

71. By reason of the conduct set forth above, Defendant intentionally, knowingly, and purposefully violated the ADA by invidiously discriminating against the qualified Plaintiff who had a disability.

72. By its actions and inactions through its agents, servants, and representatives, Defendant refused to accommodate Plaintiff and/or created, maintained, and permitted to be maintained a work environment, which was hostile and

discriminatory to persons such as Plaintiff who are disabled, have a record of, or are perceived as having a disability.

73. As a direct result of Plaintiff's disability and/or requests for accommodation, Defendant terminated Plaintiff's employment.

## COUNT II
## PLAINTIFF v. DEFENDANT ZEP
## RETALIATION UNDER THE ADA

74. Paragraphs 1 through 73 inclusive, are incorporated by reference as if fully set forth at length herein.

75. Plaintiff engaged in protected conduct when he complained an/or reported the failure of Defendant to accommodate his known disability.

76. "Protected Conduct" only requires that Plaintiff reasonably perceive and report matters, concerns and/or believed noncompliances related to his rights under the ADA.

77. As a result of Plaintiff's protected conduct, Defendant retaliated against Plaintiff for exercising his rights under the ADA, namely requesting and/or reasonable accommodation, complaining about discrimination and harassment in violation of the ADA and engaging in protected conduct in reporting, objecting to and complaining about Defendant's failure to accommodate under the ADA.

78. For purposes of the ADA actionable retaliation is any employer conduct that would deter or discourage a reasonable employee from reporting or objecting.

79. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's retaliatory practices unless and until this Court grants relief.

### COUNT III
### PLAINTIFF v. DEFENDANT ZEP
### WRONGFUL DISCHARGE

80. Paragraphs 1 through 79, inclusive, are incorporated by reference as if fully set forth at length herein.

81. The public policy of Pennsylvania as well as that of the federal government (including OSHA and the CDC) reflects numerous policies and statutes intended to protect against Covid in the workplace and to protect employees, including without limitation, laws and guidelines issued by the Pennsylvania Department of Health.

82. Plaintiff was wrongfully terminated in violation of the public policies of Pennsylvania.

### V. PRAYER FOR RELIEF

83. Paragraphs 1 through 82, inclusive, are incorporated by reference as if fully set forth at length herein.

WHEREFORE, Plaintiff requests this Court to enter judgment in his favor and against Defendant and requests that this Court:

(a) Exercise jurisdiction over his claims;

(b) Award traditional tort remedies such as compensatory damages, pain and suffering, physical and emotional distress, economic loss, time loss, and

15

severe emotional trauma;

(c) Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

(d) Order Defendant compensate Plaintiff for back pay with a rate of pay and other benefits and emoluments to employment to which he would have been entitled had he not been subject to unlawful discrimination and/or retaliation;

(e) Order Defendant compensate Plaintiff with an award of front pay, if appropriate;

(f) Order Defendant compensate Plaintiff for the wages and other benefits and emoluments of employment lost, because of their unlawful conduct;

(g) Order Defendant pay to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses as allowable;

(h) Order Defendant pay to Plaintiff pre- and post-judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

(i) The Court award such other relief as is deemed just and proper;

(j) Award Punitive Damages against Defendant in that Defendant intentionally and recklessly chose to disregard public and employee safety and the ADA law and intentionally retaliated to silence and terminate Plaintiff.

## VI.  JURY DEMAND

Plaintiff demands trial by jury.

HAHALIS & KOUNOUPIS, P.C.

By: /s/ George S. Kounoupis
GEORGE S. KOUNOUPIS, ESQUIRE
20 East Broad Street
Bethlehem, PA 18018
(610) 865-2609
Attorneys for Plaintiff

Dated: November 1, 2020